UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------
IN RE:

      LOUISE E. JENKS             CASE NO. 08-62085


                        Debtor(s)      Chapter 7
--------------------------------------------------------------
GE MONEY BANK F/K/A
CAPITAL CONSUMER CARD CO.,

                    Plaintiffs

      vs.                 ADV. PRO. NO. 08-80076

LOUISE E. JENKS

                    Defendant
--------------------------------------------------------------
APPEARANCES:

HARRIS BEACH, PLLC           PATRICK RADEL, ESQ.
Attorney for the Plaintiff        Of Counsel
99 Garnsey Road
Pittsford, New York 14534

LOUISE E. JENKS
Pro Se
739 Dickson Street
Endicott, New York 13760

Hon. Diane Davis, U.S. Bankruptcy Judge

## MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

      The Court considers herein a motion filed on February 10, 2009, on behalf of GE Money

Bank, f/k/a Capital Consumer Card Company (the "Bank" or "Plaintiff"), seeking summary

judgment in the adversary proceeding it commenced on December 31, 2008. Plaintiff seeks a denial

of dischargeability of a debt incurred by Louise E. Jenks ("Debtor" or "Defendant"), in the amount

2

of $6,039.97, pursuant to § 523(a)(2)(A) of the Bankruptcy Code (11 U.S.C. §§ 101-1532) ("Code").

Issue was joined by the filing of what was deemed to be an Answer by the Debtor, representing

herself on a *pro se* basis on January 13, 2009 (Dkt. No. 4).

On April 17, 2009, the Debtor appeared before the Honorable Robert E. Littlefield at the

Court's regular motion term in Binghamton, New York, in connection with the motion for summary

judgment.  The motion was adjourned to April 21, 2009, at which the Debtor again appeared on the

motion on a *pro se* basis.

By letter, dated May 7, 2009, the Court wrote to Thomas Miller, Esq. ("Miller"), the attorney

on record in the Debtor's case, expressing its concerns about his failure to appear on behalf of the

Debtor in connection with the Bank's motion for summary judgment in the pending adversary

proceeding.  At the Court's motion calendar held on May 19, 2009, Miller indicated that there had

been some miscommunication between himself and the Debtor concerning an affidavit that he had

prepared on her behalf at the request of the Bank, and that he had met with the Debtor and advised

her that he felt he could no longer represent her in the adversary proceeding.  However, at the

hearing on May 19, 2009, he indicated to the Court that he was more than willing to attempt to settle

the matter with the Bank's counsel as Debtor's counsel in the case.

The Court agreed to adjourn the motion to June 4, 2009, in order to allow Miller an

opportunity to discuss the case with the Bank's attorneys.  The motion was again adjourn to July 2,

2009, at which time it was represented to the Court that although settlement discussions had been

fully explored by Miller on the Debtor's behalf, the Bank was taking the position that it was entitled

to the relief it was seeking in its motion for summary judgment.  Accordingly, the Court indicated

that it would take the matter under submission.

3

**JURISDICTIONAL STATEMENT**

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), and (b)(2)(I).

**FACTS**

On August 29, 2008, Debtor filed a voluntary petition ("Petition") pursuant to chapter 7 of the Code.  According to Debtor's Schedules D and E, she has no secured or priority creditors.  Listed in Schedule F filed with the Petition are $23,889.33 in unsecured debts, including one in the amount of $5,805.09, listed as being owed to Lowe's.

According to the Affidavit of Tracy Jefferson ("Jefferson"), Legal Services Manager for GE Money Bank, the Debtor completed a Lowe's Credit Card Application on March 15, 2008, asking that GE Money Bank issue her a Lowe's credit card.  *See* Exhibit "C," attached to Jefferson Affidavit, sworn to on February 5, 2009.  Debtor acknowledges having applied for the Lowe's credit card in March 2008 and having been approved for a credit line of $12,600.  *See* Unsworn Affidavit of Debtor, dated April 1, 2009 (Dkt. No. 13).  On the Credit Card Application, signed by the Debtor, she indicated an annual income from all sources of $48,000.  *Id.*  According to the Debtor, her income was actually $667 per month at the time she applied for the credit card, comprised of Social Security benefits, and that it is now $711 per month.[1]

---

[1]  On Schedule I, Debtor indicates Social Security benefits but identifies no amount.  The only income appearing on Schedule I is that of her husband, consisting of pension and retirement income in the amount of $1,264 per month.  Debtor lists her average monthly expenses as totaling

4

As of May 12, 2008, the balance due on the credit card was $0.00. Jefferson Affidavit at ¶ 10. On May 13, 2008, the Debtor's credit card was used to purchase two gift cards from Lowe's, one in the amount of $400 and another in the amount of $300.[2]  *See* Exhibit "A", attached to Complaint. On May 14, 2008, an additional three gift cards were purchased using her Lowe's credit card, one for $350, a second for $500 and a third for $300. *Id.* On May 15, 2008, two more gift cards for $500 each were purchased, and on May 16, 2008, another gift card for $500 was purchased. *Id.* Also on May 16, 2008, there were purchases of hose nozzles and a gift card, totaling $509.69, and drop cloths and a gift cards, totaling $1,012.94, using the Debtor's credit card. *Id.* The Debtor indicates that the gift cards and "miscellaneous items" were purchased for family members. Debtor's Affidavit, sworn to March 10, 2009 (Attached as Exhibit A to Dkt. No. 14). Specifically, Debtor states that she "gave most of those gift cards to my former husband because he was in financial straits." *See* Letter from Debtor, dated April 26, 2009 (Dkt. No. 15). She goes on to indicate that he had promised to make the payments on the account; however, he is alleged to have died in early 2009. *Id.* According to Plaintiff, the only payments made on the Debtor's account consisted of an $80 payment on May 12, 2008, and two $40 payments on May 22, 2008 and June 14, 2008, respectively, leaving a balance of $6,039.97 as of the Petition Date. *See* Exhibit "A" attached to Complaint.

The Debtor states that she had a meeting with Credit Counseling Services in Binghamton,

---

$1,266.75, leaving a negative monthly net income of $2.75. At the hearing on July 2, 2009, it was represented to the Court that she receives no support from her husband and in addition to the Social Security benefits, she had annual income in 2008 of $2,000 to $3,000 based on payroll records provided to the Bank.

[2] At the hearing on July 2, 2009, there was a suggestion that the purchases had actually been made by the Debtor's son with her authorization.

5

New York, in June 2008 in the hopes that they could assist her in paying off the debt. Two months later, on August 29, 2008, she filed her Petition because she felt it was her "only way out" after having made what she describes as "a terrible, terrible mistake." *See* Debtor's Answer. She states that she is 74 years old and has always paid her bills on time. Debtor contends that the purchases were made in good faith, and that it was never her intention not to make payments on the credit card. *See* Debtor's Unsworn Affidavit, dated April 1, 2009 (Dkt. No. 13).

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), as incorporated by reference in Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), provides that summary judgment may be granted where there is "no issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Federal Deposit Ins. Corp. v. Bernstein*, 944 F.2d 101, 106 (2d Cir. 1991). In deciding a motion for summary judgment, a court must initially determine whether there are issues of material fact to be tried. *See LaFond v. General Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). Once the moving party has met his/her initial burden, the adverse party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). This requires the nonmoving party to make a "sufficient showing to establish an essential element to that party's case, and on which the party would bear the burden of proof at trial." *Williams v. Williams (In re Williams)*, 50 F.Supp. 2d 951, 956 (C.D. Calif. 1999).

Exceptions to discharge of a debt are to be strictly construed against the creditor and liberally in favor of the honest but unfortunate debtor. *See MBNA America v. Parkhurst (In re Parkhurst)*,

202 B.R. 816, 820 (Bankr. N.D.N.Y. 1996).   The burden is on the creditor to establish by a

preponderance of the evidence that the particular debt should not be discharged.  *Grogan v. Garner*,

498 U.S. 279 (1991).

To this end, the Plaintiff must establish that (1) the Debtor made a false representation; (2)

that the Debtor knew the representation was false at the time it was made; (3) that the Debtor made

the false representation with the intent to deceive the Plaintiff; (4) that the Plaintiff justifiably relied

on the representation; and (5) that the Plaintiff sustained a loss that was proximately caused by the

false representation.  *In re Macias*, 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004).

Recognizing the difficulty of establishing fraud in the context of credit card transactions, this

Court adopted what has been referred to as the "implied representation doctrine."  *See Advanta Nat'l

Bank v. Kurtz*, 213 B.R. 253, 259 (Bankr. N.D.N.Y. 1997), citing *Parkhurst*, 202 B.R. at 820.  Under

this approach, each time the card is used to make a purchase or make a cash advance a debtor

impliedly represents his/her intent to repay the debt.  *Id.*; *see also Macias*, 324 B.R. at 187 (citations

omitted).  However, "by using a credit card, the credit card holder does not necessarily represent that

he or she has the present ability to repay the debt incurred."  *Id.* at 187-88 (citing, *inter alia*,

*Parkhurst*, 202 B.R. at 822).   Thus, the Plaintiff must establish that the Debtor knew full well that

any professed intention to repay was false or was known by the Debtor not to be well-grounded, and

that she nonetheless deliberately used the card to obtain goods she knew were beyond her ability to

pay.  *Macias*, 324 B.R. at 188 (citation omitted).

In considering whether a debtor knew that the representation was false, the courts examine

a number of factors including, (1) the timing of the charges, i.e. the length of time between charges

and the filing of the bankruptcy petition; (2) the frequency and amount of the charges and whether

7

they exceeded the credit limit and were made on the same day; (3) the nature of the charges, i.e.

whether they were for necessities or luxuries; and (4) the debtor's situation when the charges at issue

were incurred, i.e. was the debtor employed, did the debtor's spending habits suddenly change. *Id.*

at 188-89.

In this case, the Debtor opened the account in March 2008 and incurred charges on her

Lowe's credit card of approximately $5,000 in the form of gift card purchases between May 13,

2008 and May 16, 2008. There was a balance of $6,039.97 on the account when she filed on August

29, 2008. She made payments on the account of $80 on May 12, 2008 and $40 on May 22, 2008

and June 14, 2008, respectively. The charges did not exceed the credit limit on the account. With

the exception of the purchases of hose nozzles and drop cloths, it is not possible to discern whether

the purchases were for luxuries or necessities without knowing what the gift cards were used for.

Debtor indicated that they were purchased as "gifts" for members of her family. This lends support

for a conclusion that the purchases using the Lowe's credit card were not for necessities from the

standpoint of the Debtor.

At the time that the Debtor incurred the charges, she indicates that she was receiving $667

per month in Social Security benefits. Plaintiff's records show no payments made on the account

in July or August 2008. According to the Debtor's schedules, her net monthly income is a negative

$2.75 if one includes her present husband's retirement income. *See* Debtor's Schedules I and J.

There is also an unsworn statement by the Debtor that "most" of the gift cards were given to her

former husband, who allegedly was in financial straits at the time, with his promise to make the

payments on the account. The facts, as presented, support the Plaintiff's contention that any intent

that the Debtor had to repay the debt was not well-grounded, based as it was on her minimal income

and on the supposed promise of her former husband whom she described as being in financial straits. She knew when the gift cards were purchased that the debt was beyond her ability to repay. Indeed, in her letter, filed January 13, 2009, she acknowledges that she made a "terrible, terrible mistake" and "with the help" of the Credit Counseling Services of Binghamton, New York, she hoped to be able to pay off the debts. Apparently after meeting with them, she realized that it would take her over three years to pay off the debt, and she decided that her "only way out was to file for bankruptcy." *Id.*

With respect to whether the Plaintiff justifiably relied on the Debtor's representation that she had the ability and intent to repay the debt, the Debtor argues that the Plaintiff should never have given her a credit limit of $12,500 given her monthly income at the time of $667. However, according to her credit application, she listed her annual income at that time as $48,000. *See* Exhibit "C", attached to Jefferson Affidavit. Thus, the Court concludes that the Plaintiff was justified in relying on the Debtor's representations that she intended to repay the debt and had the ability to repay it. In addition, Plaintiff has established a loss of $6,039.97, which Debtor has not contradicted with any evidence of her own.

Accordingly, the Court concludes that the Plaintiff has established all elements of its cause of action based on Code § 523(a)(2)(A) by a preponderance of the evidence. There appear to be no issues of material fact that would prevent Plaintiff from obtaining a judgment as a matter of law. The Court finds that although the Debtor has made certain equitable arguments, she has failed to set forth any facts showing that there is a genuine issue for trial.

Based on the foregoing, it is hereby

ORDERED that Plaintiff's motion for summary judgment is granted; it is further

9

ORDERED that a judgment in the amount of $6,039.97 in favor of the Plaintiff is granted; and it is further

ORDERED that the debt in the amount of $6,039.97 is nondischargeable pursuant to Code § 523(a)(2)(A); and it is finally

ORDERED that Plaintiff be granted $250.00 in costs.

Dated at Utica, New York

this 22nd day of July 2009

       /s/ Diane Davis
      DIANE DAVIS
      U.S. Bankruptcy Judge